

**MMB**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELICA RIVERA** | : | |
| **Plaintiff** | : | **JURY TRIAL** |
| **vs.** | : | **DEMAND** |
| **THE CITY OF PHILADELPHIA, PHILADELPHIA** | : | |
| **POLICE OFFICER REGINALD GRAHAM, BADGE #** | : | **C.A. NO. 18-** |
| **6214; PHILADELPHIA POLICE OFFICER PAUL** | : | |
| **RICH, BADGE # UNKNOWN, PHILADELPHIA** | : | |
| **POLICE OFFICER PASSALACQUA, BADGE #** | : | |
| **UNKNOWN, PHILADELPHIA POLICE OFFICERS** | : | |
| **DOE 1-6, BADGE #'s UNKNOWN, Individually and in** | : | |
| **their capacity as police officers** | : | |
| **Defendants** | : | |

**18    2066**

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Before her acquittal on all criminal charges at trial, Angelica Rivera spent 3 months imprisoned while awaiting trial for narcotic and firearm related offenses that she did not commit.

2. Ms. Rivera has maintained her innocence from the date of her arrest on November 3, 2011 until her acquittal on September 16, 2015.

3. Due to the fabrication of evidence and testimony by the Defendant police officers, Ms. Rivera was incarcerated for more 3 months and suffered emotional and financial hardship.

4. This miscarriage of justice was the direct result of the egregious misconduct by the Defendant police officers of the Philadelphia Police Department. In particular, in order to make their case against Ms. Rivera, Defendants fabricated and

misrepresented the information provided to authorities and in Court under oath which was used as a basis for probable cause to arrest and prosecute the Plaintiff.

5. This action arises under 42 U.S.C. § 1983 for claims involving the false arrest and malicious prosecution of Ms. Rivera by the Defendants.

6. It involves police misconduct by the individual Defendants, in particular, the unlawful actions of one of the arresting Police Officers in this case – Reginald Graham, as well as the actions or inactions of Officer Graham's fellow police officers.

7. In 2013, after Plaintiff's arrest but before her acquittal of all criminal charges, Defendant Graham was himself the subject of federal and state investigations regarding police corruption.

8. In May of 2014, Defendant Graham agreed to be polygraphed by the FBI and failed the polygraph test regarding theft of monies during a 2005 raid in which Graham was the lead investigator. Defendant Graham later admitted that he lied in in the polygraph test on June 22, 2016 in the Philadelphia Police Department Internal Affairs Division ("IAD").

9. Despite this revelation, the Philadelphia Police Department and the Philadelphia District Attorney's Office concealed this fact and failed to turn over this evidence of police misconduct to defense attorneys until the matter was exposed in the media.

10. The Philadelphia District Attorney's Office continued to use Defendant Graham in the prosecution of criminal cases until the Philadelphia Police Department's Board of Inquiry held a hearing due to the allegations of the Philadelphia Police Department Internal Affairs Report of police corruption.

11. In March 2016, the Philadelphia District Attorney's Office publically disclosed a list of former and current Philadelphia Police Officers who were on a "Do Not Call" list of police officers deemed not fit to testify in court.

12. Defendant Graham was listed on this "Do Not Call" list. The Philadelphia District Attorney's Office stated that due to questions of credibility cases have or will be reversed and all criminal charges will be dismissed.

13. Plaintiff now brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of a Philadelphia police officer who used improper and unconstitutional means to secure search warrants by deception and misrepresentation, search persons and property, and subject citizens to unlawful arrest, detention and prosecution.

14. Further, as detailed below, Ms. Rivera's wrongful conviction was the direct result of the unconstitutional and otherwise improper policies, practices, and customs of the Philadelphia Police Department, including all the Narcotics Units, which for a period starting as early as the 1980's and continuing through the investigation and arrest in this case and for years thereafter, evidences deliberate indifference by the Defendant City of Philadelphia to practices of fabrication of evidence, suppression of exculpatory evidence, and abuse of authority.

## II. JURISDICTION

15. This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory provision.

### III. PARTIES

16. Plaintiff, Angelica Rivera is an adult female who was at all times relevant to the Complaint, a resident of Philadelphia, Pennsylvania.

17. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and had the responsibility of adopting policies, implementing procedures and practices which would create an environment whereby citizens would be safe from police abuse.

18. Defendant Graham, Badge number 6214, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

19. Defendant Rich, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

20. Defendant Passalacqua, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

21. Defendant Does 1-6, Badge numbers unknown, are and were at all times relevant to this Complaint, police officers for the City of Philadelphia and acting under the color of state law. They are being sued in both their individual and official capacities.

## IV. FACTS

22. For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

23. The City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature.

24. On November 3, 2011, Plaintiff was sitting on the front step of her friend's sister's home at 2061 E. Victoria Street, Philadelphia Pennsylvania when without warning Defendants operating in two or three vehicles drove down the street and jumped out of their vehicles proceeded past Plaintiff and entered 2061 E. Victoria. Defendants at the same time also entered another house on that block located at 2071 E. Victoria.

25. Frightened Plaintiff began to walk down the street when she was seized by Defendants and placed into custody.

26. Both 2061 E. Victoria and 2071 E. Victoria were searched and according to Defendants narcotics and weapons were confiscated out of both homes.

27. The resident of 2071 E. Victoria was also arrested.

28. Plaintiff was arrested and charged with narcotic and weapon related offenses.

29. On November 4, 2011, Plaintiff's bail was set at $20,000. Plaintiff was unable to pay bail and remained incarcerated until January 5, 2012 when her bail was reduced to $6,000.

30. The Defendant Officers and other officers all gave false statements concerning the incident described in the complaint.

31. Defendants Graham, Rich, Passalacqua and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations included, but were not limited to:

a. That they had probable cause to arrest the Plaintiff;

b. That Plaintiff possessed narcotics and a firearm; and

c. That Defendant Officers lied about the times of their activities; the times indicated in their reports of events which did not occur; this was done to conceal their illegal activities.

32. Defendant Officers were aware of exculpatory information about the Plaintiff.

33. The Defendant Officers failed to provide exculpatory information known to them to the Plaintiff or her criminal counsel via police paperwork or any other means after the arrest.

34. The exculpatory information known to police that was not provided to the Plaintiff included the real facts and circumstances of the incident.

35. The misrepresentations contained in the affidavit of probable cause, arrest report and property receipts were material to the probable cause determination of the arrest; indeed, without these allegations, the probable cause required for Plaintiff's arrest contain no cause or reason to warrant the arrest and/or prosecution.

36. All the Defendants provided prosecutors from the Philadelphia District Attorney's Office with false, misleading, and incomplete information regarding their

investigation in this case in an effort to obtain the District Attorney's Office's approval for Ms. Rivera's prosecution.

37. Ms. Rivera has maintained her innocence and adamantly denying any role in the crime. She denies her involvement in the distribution of narcotics or a firearm.

38. On September 16, 2015, after spending three months in prison and almost four years awaiting trial, Plaintiff was acquitted of all criminal charges.

39. In December 2013, Defendant Graham himself became the subject of a federal investigation into police wrongdoing and corruption involving himself and several members of his Narcotic Field Unit (NFU) squad he worked in since September 2000.

40. According to an Internal Affairs Division (IAD) Investigation, Defendant Graham unsolicited went to the FBI on November 25, 2013 to provide his knowledge regarding his fellow NFU Police Officers under investigation for several alleged crimes against citizens who were targeted by these NFU Officers employing various unconstitutional acts including but not limited to robbery, excessive force, unlawful arrests and perjury.

41. Unbeknownst to Defendant Graham at the time of the federal investigation he was himself implicated as a party to criminal conduct by former Police Officer Jeffrey Walker. See a copy of IAD Internal Investigation #14-1404 attached hereto as Exhibit "1".

42. Jeffrey Walker alleged that Defendant Graham participated in stealing money during a drug investigation of a house at 7408 Brockton Street (sic) ("Road"),

Philadelphia, Pennsylvania on January 21, 2005 where Defendant Graham was acting as lead investigator. *Id.*

43. Jeffrey Walker who became a cooperating witness for the federal government in 2014 and later in 2016 for civil rights Plaintiffs stated that he participated in stealing money with Defendant Graham on narcotic investigations when they worked together in the NFU squad. *Id.*

44. Specifically, in the Brockton Road job, Jeffrey Walker stated that Defendant Graham and Walker searched a vehicle where Walker found money in the trunk of the vehicle and gave a portion of the money to Defendant Graham. Jeffrey Walker further informed the authorities that Defendant Graham and Walker split the money stolen from the trunk of the vehicle. *Id.*

45. More money was also confiscated in the trunk of the vehicle that was turned over to Defendant Graham's supervisor, Chester Malkowski. *Id.*

46. During an interview of Defendant Graham by federal investigators in 2013, he stated that he was barred from the room where the Sergeant and two other officers, who Defendant Graham identified as "dirty officers" counted the money turned in at the Brockton Road job and later admitted that he changed his paperwork to reflect that he did not count the money.[1] See a copy of Federal Bureau of Investigation, dated November 25, 2013 attached hereto as Exhibit "2".

---

[1] Despite the fact that Defendant Graham informed federal investigators that these officers were "dirty officers" he nevertheless joined with these same "dirty officers" in December 2005 and sued a civil rights attorney who represented several individuals bringing civil rights claims against these police officers for constitutional rights violations. See *Liciardello v. Pileggi*, CCP, Philadelphia County, May Term 2005, No. 435. Defendant Graham and his cohorts claimed that the attorney engaged in the wrongful use of civil process. *Id.* Even though Defendant Graham verified the allegations in the complaint as true and correct he later admitted to federal authorities that "(PILEGGI) [the attorney]

47. In 2014, Defendant Graham was interviewed by a federal Polygraph Examiner who administered a polygraph examination of Defendant Graham concerning an investigation of 5 former partners who Defendant Graham worked with in the NFU squad, including Jeffrey Walker, the Sergeant and the two police officers involved in the Brockton Road job who were in the room with the Sergeant counting the money that was turned in that day. See a copy of Polygraph Examination Report attached hereto as Exhibit "3".

48. Defendant Graham informed the Polygraph Examination investigator that he knew that the above referenced police officers were "dirty officers" that stole money from drug dealers and crime scenes. He added that the officers were "big hitters" who were protected by the "administration". *Id.* at 2.

49. Defendant Graham discussed the Brockton Road job and informed the investigator that he never stole money as alleged by Jeffrey Walker. Defendant Graham stated that he has "never been offered, stolen or given any illegal stolen money from any police activity". *Id.* at 3.

50. During the Polygraph Examination Defendant Graham was asked the following questions: "A. Did you steal that money from Brockton Road? B. Did you take that money from Walker?" Defendant Graham answered "No" to both questions. *Id.*

51. Defendant Graham failed the Polygraph Examination where the investigator indicated that "Deception Indicated" for both answers. *Id.* at 1.

---

was on the money when he sued officers including LICIARDELLO about the way his cases were written up". See Exhibit "2" at page 3.

52. On October 28, 2016, the Philadelphia Police Department charged Defendant Graham with "Conduct Unbecoming" by engaging in any action that constitutes the commission of a felony or misdemeanor and "Conduct Unbecoming" by lying or attempting to deceive regarding a material fact during the course of any Departmental Investigation. See copies of Police Board of Inquiry (PBI) Statement of Charges Filed and Action Taken attached hereto as Exhibit "4".

53. A PBI hearing was held on March 8, 2017 whereby Defendant Graham was found guilty on all charges. *Id.*

54. Defendant Graham's employment with the Philadelphia Police Department was terminated.

55. On March 6, 2018, the District Attorney's Office under Court Order to do so, released the "Do Not Call" list disclosing those police officers considered untrustworthy or too problematic to allow to testify in criminal cases involving those individuals who the police officers on list arrested or were involved in the arrests. See Philadelphia Daily News, *"Here are the 29 Philly cops on the DA's 'Do Not Call' list"*, March 6, 2018.

56. It was disclosed that Defendant Graham was on that list because he was "investigated by federal authorities for several alleged acts of corruption". In addition, Defendant "Graham's testimony was central to the arrest of Meek Mill more than a decade ago — a case that has since landed the rapper back in prison due to probation violations. Mill's attorneys recently filed a motion accusing Graham of lying under oath to secure Mill's arrest". *Id.*

57. Plaintiff only recently discovered that Defendant Graham was the target of investigations into police corruption and was on the District Attorney's "Do Not Call" list. She now brings this civil rights action based on this newly discovered evidence within the time period promulgated by the Statute of Limitation for such constitutional law violations.

58. The Defendant officers, acting in concert and conspiracy, caused the Plaintiff to be arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the arrest report, the 75-49, and at the preliminary hearing; failing to disclose to prosecutors the fact that the information provided to the authorities in support of the arrest was false and misleading, the information in supporting police documents was false and misleading and his testimony at trial was false and misleading; fabricating evidence to support the claim that the Plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

59. The only evidence leading to Plaintiff's arrest was derived from the false and misleading information provided by the Defendants Graham, Rich, Passalacqua and/or other police officers.

60. For many years dating back at least to the 1980's, and continuing well beyond the time of the investigation, arrest and prosecution of Ms. Rivera, the City of Philadelphia, had in force and effect a policy, practice, or custom of unconstitutional misconduct in the Narcotic's Units, including the Narcotics Field Unit, and in particular, fabricating inculpatory evidence and withholding exculpatory evidence.

61. This policy, practice, or custom of "articulating" (falsifying) information to create probable cause to arrest and prosecute individuals otherwise innocent of the crime while concealing the police officers own improper and illegal conduct was pervasive.

62. This policy, practice, or custom also involved various techniques by Narcotics police officers to make false statements and testimony at trial appear true and reliable.

63. These practices were well known to the City of Philadelphia and its policymakers with respect to narcotics investigations and prosecutions as a result of newspaper investigations, prosecutors from the Philadelphia District Attorney's Office, governmental investigations, complaints from lawyers and civilians, internal police investigations and hundreds of lawsuits filed against police officers from various narcotics units.

64. Various cases demonstrate that this misconduct was pervasive within the Philadelphia Police Department at the time of Ms. Rivera's arrest and prosecution, and upon information and belief, the misconduct described below was committed with the knowledge of Philadelphia Police Department supervisors or because of their deliberate indifference to this misconduct.

65. At the time of this incident, and for some years before, law enforcement at the highest levels knew of integrity, corruption, and civil rights violation issues involving Defendant Graham. Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her

subordinates, as well as her successor, former District Attorney Seth Williams knew. The basis of this knowledge was information from multiple sources including, but not limited to, federal investigations, questions raised by state and federal prosecutors, judges and other sources.

66. The foregoing conduct of Defendants Graham, Rich, Passalacqua acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to maliciously prosecute and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

67. Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all Defendants. Plaintiff maintained his innocence of the charges brought against him.

68. The detention and malicious prosecution in this case were the direct result of all Defendant Officers' pattern, practice and custom of subjecting citizens such as the Plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

69. The Defendant officers acted willfully, deliberately, maliciously or with reckless disregard of the Plaintiff's constitutional and statutory rights.

70. As a direct and proximate result of the actions of all Defendant Officers, the Plaintiff suffered and continues to suffer physical and psychological harms, pain and suffering, damage to reputation, some or all of which may be permanent, as well as financial losses.

71. As a direct and proximate result of the actions of all Defendants Officers, the Plaintiff suffered her loss of liberty by being incarcerated for three (3) months.

71. All Defendant Officers engaged in the aforesaid conduct for the purpose of violating the Plaintiff's constitutional rights by subjecting the Plaintiff to malicious prosecution, and prolonged detention.

72. The actions and conduct of the Defendant Officers were caused by a policy, practice and custom of Defendant City of Philadelphia of failing, with deliberate indifference, to supervise, monitor, and properly train narcotics officers with respect to (a) their duty to provide only truthful information in securing search and arrest warrants, (b) their duty to ensure that relationships and dealings with confidential informants and/or sources are in accord with Police Department policy and constitutional commands, (c) their duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) their duty to provide accurate and truthful information to the prosecutor's office, (f) their duty to report and disclose misconduct and illegal actions of other police officers, (g) the proper execution of search warrants and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

73. Defendant City of Philadelphia has failed to properly discipline Defendants Graham, Rich, Passalacqua and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case.

74. The above described actions of all of the Defendants caused the violations of the Plaintiff's rights under the Fourth and Fourteenth Amendment as alleged in this complaint.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

75. The allegations set forth in paragraphs 1-74 inclusive, are incorporated herein as if fully set forth.

76. As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of his privileges and immunities under the laws and the Constitution of the United States. Plaintiff's right to be free from malicious prosecution and to be secure in one's person and property, all to Plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

77. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

78. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

   a. Unjustified, unreasonable and illegal use of process by police officers;
   b. Abuse of police powers, including malicious prosecution, harassment and improper searches;
   c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;
   d. Arresting and incarcerating citizens without probable cause solely for

the purpose of committing citizens to prison with no intention of
seeking criminal prosecutions;

e. Psychologically or emotionally unfit persons serving as police officers;
and

f. Failure of police officers to prevent, deter, report or take action against
the unlawful conduct of police officers, in particular those police officers
who fabricate information and evidence used to prosecute  citizens innocent
of the crimes they are accused and prosecuted for.

79. Defendant City of Philadelphia has encouraged, tolerated, ratified and has

been deliberately indifferent to the following patterns, practices and customs and to

the need for more or different training, supervision, investigation or discipline in the

areas of:

a. Unlawful detentions, unlawful searches, unlawful arrests and prosecutions
without probable cause by police officers;

b. The proper exercise of police powers, including but not limited to the use of
false information to obtain search warrants, fabrication of evidence, unlawful
arrest, unlawful searches, malicious prosecution and unlawful detention;

c. The monitoring of officers whom it knew or should have known were
suffering from emotional and/or psychological problems that impaired their
ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police
officers who were the subject of prior civilian or internal complaints of
misconduct;

e. Police officers' use of their status as police officers to employ the use of
unlawful search and/or arrest, or to achieve ends not reasonably related to
their police duties;

f. Police officers' use of their status as police officers to employ the use of
unlawful arrest, invoke the Code of Silence, or to achieve ends not
reasonably related to police duties;

g. The failure of police officers to follow established policies, procedures,
directives and instructions regarding the securing of search warrants and the
use of arrest powers under such circumstances as presented in this case;

h. The refusal of police officers to intervene when other officers violate the
rights of citizens in their presence;

i. The failure to identify and take remedial or disciplinary action against units
of officers assigned to narcotics investigations in light of repeated instances
of misconduct over a period of many years as alleged in this Complaint; and

j. The refusal of police officers to report or provide information concerning the
misconduct of other police officers, a custom or practice known as the "Code
of Silence."

80. Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to: (a) the duty to provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

81. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the Defendant officers in this case, to violate the rights of citizens such as the Plaintiff.

82. Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary

mechanism that imposes meaningful disciplinary and remedial actions in the

following respects:

   a. There are excessive and chronic delays in resolving disciplinary complaints;
   b. There is a lack of consistent, rational and meaningful disciplinary and
      remedial actions;
   c. There is a failure to effectively discipline substantial numbers of officers who
      were found to have engaged in misconduct.
   d. The PPD's internal investigatory process has fallen below accepted practices
      and is arbitrary and inconsistent;
   e. The PPD discipline, as practiced, is incident based rather than progressive.
      Thus, repeat violators are not being penalized in proportion to the number of
      violations.
   f. The conduct of IAD investigations demonstrates that PPD internal affairs
      personnel are not adequately trained and supervised in the proper conduct of
      such investigations;
   g. A global analysis of IAD's investigatory procedures indicates a pattern of
      administrative conduct where the benefit of the doubt is given to the officer
      rather than the complainant;
   h. There are serious deficiencies in the quality of IAD investigations and the
      validity of the IAD findings and conclusions;
   i. The PPD lacks an effective early warning system to identify, track and
      monitor "problem" officers.
   j. Despite the fact that the Defendant officer had amassed an
      exceptionally large number of serious misconduct complaints, the officer
      stayed well below the radar of an early warning system;
   k. Despite numerous prior complaints against the Defendant officer,
      the PPD took no meaningful disciplinary or remedial actions;
   l. Despite numerous prior complaints against the Defendant officer,
      the PPD took no meaningful steps to more closely monitor, retrain and
      supervise the officer;
   m. IAD frequently fails to interview available eyewitnesses to incidents
      involving citizen complaints of misconduct. The interviews that are
      conducted by IAD are below acceptable standards of police practice and fail
      to address key issues in the cases; and
   n. IAD fails to acknowledge those cases where police officers fabricate
      evidence to justify the arrest and prosecution in the investigation of citizen
      complaints and fails to properly categorize the police officers' misconduct in
      those cases as an impermissible use of their police powers.

   83. The City of Philadelphia was deliberately indifferent to the need for more or

different training, supervision, investigation or discipline in the areas of:

> a. Use of information in obtaining probable cause;
> b. Exercise of police powers;
> c. Police officers with emotional or psychological problems;
> d. Police officers use of their status as police officers to have persons
>    falsely arrested and maliciously prosecution and unlawfully searched
>    or to achieve ends not reasonably related to their police duties; and
> e. False arrest, malicious prosecution and evidence planting of citizens.

84. The City of Philadelphia failed to properly sanction or discipline officers,

who are aware of and conceal and/or aid and abet violations of constitutional rights of

citizens by other police officers, thereby causing and encouraging police officers,

including Defendants Graham, Rich, Passalacqua and Does in this case, to violate the

rights of citizens such as Plaintiff.

85. The City of Philadelphia failed to properly sanction or discipline officers and

acquiesced to the Defendant officers' unlawful conduct after becoming aware that

these particular officers engaged in the aforementioned conduct in cases dating back

to 2011 while concealing and/or aiding and abetting in the violations of constitutional

rights of citizens by this police officer, thereby causing and encouraging police

officers, including Defendants Graham, Rich, Passalacqua and Does in this case, to

violate the rights of citizens such as Plaintiff.

86. There has been a longstanding history, which has been extensively

documented since the 1980s, of Philadelphia Police Officers engaging in rampant

illegal conduct in narcotics investigations. A non-exhaustive list of such conduct

includes:

> a. In the early 1980s, in the "One Squad Scandal" a group of Philadelphia
>    narcotics Officers were convicted of selling drugs that they had stolen from
>    dealers;
> b. During the decade between 1980-1989, a lieutenant and three officers from
>    another drug unit, the "Five Squad" engaged in conduct including the theft

of drugs and over $280,000.00 that resulted in federal convictions for, *inter alia*, racketeering;

c. In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians. These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects;

d. In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer;

e. In the last five years, numerous narcotics officers – including, as described *supra*, some and/or all of the Defendant Officers in this matter – have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as a result of a series of articles by Philadelphia Daily news reports known as "tainted Justice", Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna and Thomas Dealer have all been assigned to either desk duty or non-narcotics related assignments. These officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving confidential informant who subsequently denied having provided information or services on many of the cases in which Cujdik affirmed he had;

f. In May of 2013, Philadelphia Police Officer Jeffrey Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . ." The criminal complaint against Defendant Walker described flagrant manner in which he unwittingly disclosed to an FBI informant his practiced schemes to rob drug dealers of both drugs and money. He described the manner in which he would confiscate a large portion of a drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a drug dealer's car so that he could arrest the drug dealer, take the drug dealer's keys, and then use the dealer's keys to enter the drug dealer's apartment and steal money.

g. In September 2016 and over the course of 5 days in September and October 2016, former Narcotics Field Unit police officer Jeffrey Walker testified at deposition to matters regarding corruption in the Philadelphia Police Department, and in particular the Narcotics Units including the falsification of information and testimony by Narcotic police officers in order to "articulate" the probable cause basis when no probable cause actually

exists. He testified that the supervisors either knew or acquiesced to this
unlawful conduct.

87.  The City of Philadelphia was aware and was deliberately indifferent to the

unconstitutional acts and omissions of the Defendant officers when:

a. Beginning in 2001, several legal complaints alleging civil and constitutional
   rights of false arrests, malicious prosecutions, falsifying documents and
   testimony alleging the violations of the constitutional rights of citizens by the
   Defendant officers were filed;

b. In 2005, former Philadelphia Police Commissioner Sylvester Johnson
   testified at trial in the case of *Arnold Randall v City of Philadelphia, et al.*,
   C.A. No. 04-1081 regarding the customs, policies and procedures with
   respect to the narcotics units generally and specifically with regards to
   allegations that the Defendant officers engaged in false arrests, malicious
   prosecutions and fabrication of evidence;

c. In 2005, IAD was authorized by the City of Philadelphia to investigate the
   numerous allegations of false arrests, malicious prosecution and
   fabrication claims against the Defendant officers, as well as other members
   of the narcotics units;

d. In 2005 and later, the Philadelphia City Solicitor's Office was authorized by
   the City of Philadelphia to investigate the numerous allegations of false
   arrests, malicious prosecution and fabrication claims against the Defendant
   officers, as well as other members of the narcotics units;

e. The City of Philadelphia was also aware that the federal authorities were
   investigating these same Defendant officers for several years for the
   violations of citizens' civil and constitutional rights during this period of
   time;

f. In 2007, the City of Philadelphia was aware of the constitutional violations
   by these same officers and other officers in the narcotics units when the
   Third Circuit Court of Appeals denied the Defendant officers claim of
   Qualified Immunity due to their unlawful and unconstitutional actions in a
   case averring the same claims as this case – false arrest, malicious
   prosecution and falsification of documents. *See Andre Blaylock v City of
   Philadelphia, et al.* 504 F.3d 405 (3d Cir. 2007); and

g. In December 2012, the Philadelphia District Attorney's Office informed
   Philadelphia Police Commissioner Ramsey that the Defendant officers would
   no longer be permitted to be witnesses in narcotic cases.

88. Defendant City of Philadelphia continued to permit, acquiesce, encourage,

tolerate, ratify and has been deliberately indifferent to the unconstitutional acts and

omissions by the Defendant officers despite the aforementioned allegations, investigations and Court holdings for years.

89. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendants Graham, Rich, Passalacqua and Does in this case, to believe that he can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

90. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property and to be free from malicious prosecution.

91. Defendants, City of Philadelphia and Defendants Graham, Rich, Passalacqua and Does acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of her constitutional and statutory rights.

92. By these actions, all Defendants have deprived Plaintiff of her rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff, Angelica Rivera prays as follows:

a. The Court award compensatory damages to Plaintiff and against all

Defendants, jointly and severally, in an amount to be determined at trial;

b. The Court award punitive damages to Plaintiff, and against all individual

Defendants in their individual capacity, in an amount to be determined at trial, that

will deter such conduct by Defendants in the future; and

c. For any and all other relief to which Plaintiff may be entitled.

## JURY DEMAND

93. Plaintiff demands a jury trial as to each Defendant and as to each count.

DATED: 5/17/18

MICHAEL PILEGGI, ESQUIRE
303 Chestnut Street
Philadelphia, PA 19106
Counsel for Plaintiff